Our first case this morning is FUNCTION MEDIA v. GOOGLE. Mr. Nelson. Thank you, Your Honor. May it please the Court, this case is about the fundamental error the District Court committed when it allowed the jury to decide disputed issues of claim scope and claim interpretation. This failure of the District Court to interpret allowed Google to take contradictory positions on the meaning of the claim to the jury. Google's sole technical expert admitted that he used one interpretation of the claim for non-infringement purposes and an opposite interpretation for validity purposes. The facts here are undisputed. In ruling on summary judgment, however, the judge explicitly found that it was for the jury to determine the open issues of claim construction. At trial, the parties agreed on how Google's system worked. During our closing argument, for example, we pointed out that our experts described the accused products exactly like Google's corporate representative did on the witness stand. And in Google's closing argument, it stated repeatedly that the facts were, quote, undisputed and that both experts agreed. Counsel, are you arguing that what happened here is similar to what happened in O2 Micro and that the decision in O2 Micro should apply? Yes, Your Honor. That is true. But it's actually really a Markman issue and not – O2 is really a Markman case, right? That it is up to the court and judges to decide disputed issues of claim scope and not the jury. And so what we had here was that on disputed issue after disputed issue, it was the jury who was deciding. This case makes O2 look like peanuts because – Are you telling us that it needs to go back for another trial because the jury was incorrectly instructed or that the jury verdict on no theory of claim construction can be sustained? Yes, Your Honor. We are asking – so the answer is that with respect to infringement, the facts are undisputed and this court can render judgment on infringement with respect to claim construction on disputed issues. It would have to be remanded for, of course, the four claims that have – for a new trial and the four claims that the court did not appeal were not invalid and, of course, on damages. But with respect to the claim construction issues, yes, Your Honor, we are asking for a rendering of the judgment with respect to infringement on the claim construction issue. What happened to those four claims? Is there a damages proceeding? No, Your Honor. On judgment as a matter of law, the district court entered judgment on four of the eight disputed claims. Google did not appeal those four claims as part of this appeal. So if this court were to enter judgment on our behalf, we would have to go back and try the damages with respect to those four claims. So to take the three issues, the first one is the creation processing issue and Google starts this argument by saying that, in fact, it was an agreed construction – Of that claim? Of the creation processing? Yes. Your Honor, so on creation, no, it was an agreed interpretation. So that was stipulated. In fact, your construction was adopted by the court, right? No, Your Honor, that's for selection. For creation, I'll address selection in a second. But with respect to creation, it was an agreed instruction on creation, but that did not answer the fundamental question of who creates. That is from the processing definition and that, Your Honor, Judge Reina, was absolutely not stipulated. So if it's stipulated, then doesn't this take it out of the O2 case, O2 micro case? To be clear, it is not stipulated on the key point, Your Honor. The creation was stipulated, but it did not – The construction was stipulated. No, Your Honor, it was heavily disputed at Markman about where the creation took place. And our proposed construction that the district court rejected was that the processing and the creation took place on the computer controller. The district court was ambiguous on that, which is why the defendant, Google, was allowed to essentially make – So let me make clear. Did you or did you not object to the court's construction on the creating terms? On creating, it was agreed, but creating did not answer the question about where the creation occurred, who created. That was in the processing and we did not – But the claim term states quite clearly that the seller interface is where the creation occurs, not the central computer system, right? No, Your Honor, we absolutely disagree with that. The seller interface creates an electronic advertisement and the central computer processes it. No, Your Honor, if you look at that claim language, if you go to Claim 1 of DO 2.5, it says, and it's clear, the seller is prompted to input information to create, not to create. The way you are reading that is to read out input information, and in fact – Why does it matter? What's significant is that it's the seller, the role of the seller, and the overall method of using the computer system. Well, yes, Your Honor, it does matter about who creates, because if the creation happens on the seller computer, then it's stipulated that there's no infringement, and if it happens at the central controller, there is infringement. And Judge Newman and Judge Rader, if you go to the specification, Column 3 of the specification specifically states that the present invention prompts the seller for information that is then used. This is Column 3, Line 28, that is then used in the creation of presentation. And then it talks about the central computer controller, the presentation generation program, 1710, along with the presentation rules database, which is also agreed that that is in the computer controller, then creates the presentation for each and every media outlet that has been chosen. That is from the specification. And might I also point out to this panel that two days ago, after these briefs were in, the Board of Patent Appeals and Interferences rejected the 025 claims on all grounds because of the issue that the creation was at the seller and not at the computer controller. We filed our opening briefs in that case just two days ago, and on this very point of where the creation occurs, it goes into heavy detail about the claim construction, about whether the creation is at the seller interface or the computer controller. And that is an absolutely critical issue to this case, about where the creation occurs. But even if creation occurs at the computer system, Google's system selects ads, not media vendors, or there's no infringement. Your Honor, two points to that. They select ads. They do exactly the opposite of you. Two points to that, Your Honor. First of all, that is not what they argued at trial. We cited in our reply brief, quote after quote, that that was not their argument. But second of all, let's just take that argument on its face, okay, that they select ads, not media venues. Actually, they are selecting ads for media venues. Google's own, again, corporate representative at trial described in the record exactly this, quote, matching process, about how it worked. And the record is crystal clear on that point, that it is a matching process. And that is, in the record, at A- They have a bidding process that they're going through, right? Of course, Your Honor. And it's a comprising claim. The fact that there is a bidding process makes absolutely no difference to infringement. The fact they are matching. Except that they're selecting ads, not media venues. They are. As your claim discusses. Your claim has the ad creator, which I look just now at the claim again, and I can see quite clearly that the seller interface is creating an electronic advertisement. With that seller creating an advertisement, that's a little different from the way Google acts, which is exactly the other way around. We completely disagree with that, Your Honor. And again- The jury seems to agree with the way that I just stated it. If you go to Google's red brief, where it cites that argument, on page 36, where it says the selecting ads, not media venues point- Page 30- Page 36, Your Honor. I'm there. You will see not a single citation to the fact that that is what they told the jury about. At the jury, the issue was only about whether the selection was at the seller interface or whether it was at the computer controller interface. And there is, again, side after side, that it is taking place at the computer controller. And in fact, Your Honor, if you go to asserted claim 90, dependent claim 90, it specifically states that it is the computer controller that is determining whether to select the advertisement. That is completely inconsistent with exactly what is being stated here on both points. The issue directly was whether the seller or the computer controller selects the advertisement and whether those ads were guaranteed to go to each of the selected media venues. So on that point, it is crystal clear that, in fact, it was not a disputed issue of fact as Google is now post hoc trying to make it. But there is not a single record site that actually states that that was their argument. And even if it was their argument, again, on the record citation A18593, this is Google's corporate representative testifying that it is a matching process. It is a matching process. The idea of selecting ads for media venues or media venues for ads, it depends on the perspective. And Google's system admittedly matches the ads with the media venues and Google's controller does that completely. So on claim construction, we think that, number one, the creation occurs on the computer controller, that the selection is done by that computer controller as the specification and the claims specifically state that preferred embodiment states that the ads are not guaranteed to go to each of the computer controllers, and the publishing can go to the browser, which is another disputed issue. It's not really Google's burden to prove that their system doesn't infringe. It's your burden to prove it does, right? That is absolutely true. They can just refute your arguments and not have to go through the description that I just gave you. That is absolutely true, Your Honor, except for the fact that the issues in front of the jury were not factual issues. They were issues on claim scope. And on that point, we are entitled to a new trial. Look, we lost our claim construction on this to create the ambiguity. What claim was not construed, in your opinion, and left to the jury to construe? All three of them. All three of the disputed elements. The creation processing, as I just described at the beginning of the oral argument. Publishing, we lost. Well, you proposed a construction, create an electronic advertisement for publication in the form customized to each of the selected internet media venues. The trial court adopted your construction. And you didn't object to that, by the way, of course. So, where's our  The problem, Your Honor, is that does not answer the question of who created it. You proposed it. If it needed to say something else, shouldn't you have asked the court to say something else? No, Your Honor. If you look at our proposed definition of processing, that is where we say where the computer controller creates. And that is exactly, it was teed up at Markman and Summary Judgment exactly on this point. On publishing, we lost on claim construction. On selection, we did get our claim construction. You proposed the construction for creating and didn't specify where that creation process is going to occur. That sounds to me like it's your problem, not the court's. Your Honor, creation was an agreed term, but part of that Yes, you were happy with it. You didn't object, you sent it to the jury, you lost, and now you say, well, we should have said something else, so we could have won. Doesn't that sound like changing the rules of the game after it's been played? Respectfully, Your Honor, I think that is absolutely incorrect. I think that that is I'm just, the problem you have is you proposed the construction of the term. It was agreed during the briefing that that did not answer the fundamental Markman question of whether the creation occurred at the seller interface or the computer controller. That was at the processing limitation. And if you look on page 30 of our Blue Book You wanted to add terms to the claim construction for creating, you had to do it during Markman and object and get it done at that point. You did not do so. You accepted it. It went to the jury. You've got to play by the rules that you gave to the trial court, right? Counsel, I think at the outset, you seem to agree that the party stipulated as to the construction of the creating term. That is absolutely true. We did, but that did So, for creating, that was stipulated. Then, for the selecting construction, it seems to me that it was your construction that was accepted by the court. So, you're not objecting to that, are you? Your Honor, if you look at the summary judgment briefing and the summary judgment order, he punted that to the court. Yes, we won on selection. That is absolutely true. So, selection, you won. Creating, you stipulated. So, that only leaves us with the publishing. Is that right? Yes, Your Honor, but if you look at the facts, the issues that were at the heart of this case on both creation, which did not answer of where the creation took place, that was in processing and selection. That was all important about who creates and who selects the central controller or the seller. And that is the same issue, and that was teed up specifically to the jury. If you have this diversion of activity, is your position as a matter of the technical law of infringement that infringement was induced by Google or that it, if they, however, some of these steps, obviously, there was interaction and participation in the performance, however, this debate is resolved? No, Your Honor, it is a literal infringement case. The claims are read as the fact that it's the computer system that does everything, and they never raise any type of argument about inducement or contributory infringement. It is a pure literal infringement case. And on the facts, because the facts are admitted that even if you were to say that the, you know, we have to lie in our bed, the facts are undisputed here. The facts, even under a new trial standard, the fact that, again, Google's expert used different constructions, one for infringement, one for invalidity, that is crystal clear from the record. A new trial has to be ordered because it is axiomatic from this court that a claim has to mean the same thing for non-infringement and invalidity. And they did not do that, and so on that ground alone. Okay, Mr. Nelson. Let's hear from Mr. Verhoeven, and then we're going to restore Mr. Nelson's five minutes of rebuttal, and that means you'll need to give Mr. Verhoeven 20 minutes if he needs to use it. Thank you, Your Honor. May it please the court. This is not an O2 micro case. In this case, the district court conducted a formal claim construction hearing. The parties had, pursuant to local rules, engaged in a process where they exchanged and met and conferred about the meanings of these terms. They reached agreement as to some of the terms, and as to some of the terms, they had a dispute, which was formally presented to the district court, and the district court, in a separate markman order, formally resolved all of the claim construction issues. Are you arguing different meanings for validity and infringement? No, Your Honor. And in fact, if you look at the way the trial was presented, we were very careful, Your Honor. In the opening and the closing, we verbatim quoted either the claim language or the construction. So, for example, Your Honors, our principal non-infringement argument before the trial court was that the creation step, the one you were just asking about, was not met. That was our number one non-infringement argument. The seller, it's a factual matter. You look at the second step of the infringement analysis, application of the claim language as agreed by all parties to the accused system. In the accused system, the advertiser cannot customize at all. It's generic. And the statement was made repeatedly that there was no dispute of fact as to how the Google system has applied to the claims, met those claims. And that's simply not true. If you read the briefs, Your Honor, even on appeal, you can see there's still a dispute of fact. And Dr. Ryan and the appellant were taking the position that this generic information was provided by these advertisers constitute, quote, initially seller-customized information. Well, we disputed that. And the closing argument, it was presented to the jury that entering generic statement, have a Coke and a smile, met the customized language, which was not, again, the language, the construction was not toyed with. What was argued was whether the accused technology met that construction, and there was a dispute. I want to sell guitar picks, and I want that to appear on every Rolling Stones site. So when people go to see the Rolling Stones, they'll buy my guitar picks. They say that it's happening the same way, that the ads are created and sent to the RollingStones.com site to be displayed in exactly the same way that the claim purports. What do you see is the difference in the way you do it? We dispute that on multiple grounds. I'll give you two. One, you start with the claim language. The stipulated construction of the creating step is, quote, Well, I've created an ad for my guitar pick. What happens under your system, and what happens under theirs? Exactly. Under their system, under the claim language, the advertiser inputs information to create this ad. So I've made my ad on the guitar pick. And it's custom. And the stipulated construction of that creation step is, quote, Create an electronic advertisement in a form customized to each of the selected internet media venues presentation rules. So you've got these media venues. This is the patent, not the accused system. You've got these media venues, and they each have their own presentation rules. And what the claim very clearly states is... The rules say that my ad has to be purple and less than 150 characters, right? That might be one example of a rule. And then another media venue will have other rules. Maybe it has to be blue, or it can be bigger, or you can have images, and the other one you can't. Whatever. This is the patent we're talking about. And the claim language clearly says that this inputting to create is to create an electronic advertisement in a form customized to each of the selected internet media venues presentation rules. Now, step two. And so under the patent, I'm selecting rollingstones.com and eagles.com, and I'm customizing to fit those... Exactly. Me, the creator. Exactly. The advertiser of guitar picks. Exactly. Now, what happens in your system? In our system, you can't do that. You cannot customize the media venues. It's a factual issue that was presented to the jury. Okay, go ahead. What you can do is you have certain fields that you enter, regardless of where you ever end up. Second point, Your Honor, in the Google accused system, as Your Honor noted, the system never then selects media venues, or ever selects media venues. Instead, it's the opposite. What happens in the system is, say I'm a user, not an advertiser, not the Google system. I'm just an average user. I go onto a web page. So I go onto rollingstones.com, and that rollingstones.com in your system does not have any advertising on it, but you send separately to my computer certain ads that you selected for me particularly. I'd like to use a different example, if I may, Your Honor. Let's say rollingstones.com is the advertiser. I think that's what you're... Rollingstones.com is the advertiser. That's the media venue. Right. So then I go, I'm just an average Joe user on the internet. I go onto a website. That website, maybe it's a local mom and pop shop for guitars. Okay. The user decides what website to go to, and as a result of that, the Google system then takes ads, and that website is signed up for ads for content, runs a very sophisticated algorithm, and I'm not going to go through all the steps because it would take too much time. It's in our papers. Suffice it to say, not all ads that the advertiser signed up for get placed there. So the advertiser did not select. You have a little auction to decide who gets to be there. Exactly. Exactly. When the user... Go ahead. Well, I was just going to ask. That's all very interesting, but I can't find in claim one all of these additional restraints as far as the breadth of the proposed system. Well, the point I'm making, Judge Newman, is number one, if you look at the accused system from a factual standpoint, the seller does not... That's an element stipulated construction of the creation element. We presented factual evidence that that wasn't met. The jury agreed with us. There's no allegation that we made any sort of inconsistent arguments about that construction in the opening appellant's brief here. So that's an independent basis that shows that the construction stipulated by the other side was our number one non-infringement argument wasn't met. There's additional non-infringement arguments, Judge Newman. In addition, there's the publication to, the media venue element. Well, that element we presented wasn't met as well, and we presented evidence, factual evidence, about how our system works. In the Google system, ads never get sent to the media venue. In the Google system, when the user enters information, is he only entering just bits of information, or do they actually result with a compliant ad? Are you referring to the advertiser? Yes. So in the Google system, the advertiser is only allowed to enter certain fields of information, and they're not allowed to customize it to particular media venues. They just simply aren't. But there was a factual dispute, and the other side presented evidence to the jury that entering these fields of information is, quote, initially seller-customized, was what their expert said. So you're selecting my ad for the guitar picks, and you may send it to different sites for Judge Newman than you would send it for Judge Rayna because of their unique characteristics. Because there's factors that have nothing to do with any of these elements here and these clients. But the point is that the advertiser did not enter information to select, and the system, the Google system, does not select media venues. The entire point of the system is to match ads to websites that a third-party user like you or me would go to. It's the backwards process of what's being talked about in the claims. Why didn't the trial court, by the way, use the glossary definition for publication and instead started adding additional terms? Is that importing limitation? No, Your Honor. And I don't want to put words in the judge's mouth, but I think what was happening at Markman is he did take the glossary definition, but that was just publishing. And there was a larger phrase, if my recollection serves me correctly, which was the publishing to the media venues. And he simply – we're talking about a difference between the word publishing to or publishing at. And it really is a distinction without a difference if you look at it because the court also adopted the glossary definition, which I think said something off the top of my head, something to the effect of accessible at. So it's really – that's a red herring, whether it's at or to, Your Honor, because it's undisputed or the evidence in cross-examination of the factual evidence at trial, step two of the infringement analysis, shows that in the Google system, the advertisement is never made accessible to, published to, published at, any choice of words you want, the media venue. The media venue has no idea that the ad was even sent to the user. But the evidence shows that what happens at the end result of the process is that the advertisement that gets selected through the auction process is sent directly to the browser of the individual who accessed the webpage in the first place. Never sent to the media venue. Whether you call it published to, published at, make available for, it's not done. And so the claim construction issue there, Your Honor, I would submit is not a significant issue. And again, this isn't about fighting the jury over claim construction. This is about the application of these agreed constructions, or in this case a slight variation, to the accused systems and these experts having a disagreement as to the second step. If I could just go to the new trial request very briefly. So my first point, Your Honors, was hey, this is not O2 micro. And I could continue with that, but in the interest of time, unless you have further questions, I'll go on to another issue, which is their request for a new trial. We believe that request should also be denied. The same request was made at the trial court level, and the trial court applied the appropriate standards as to whether the verdict was against a great weight of the evidence. The trial court exercised its discretion, found that this was a very hard-fought case, denied the motion for a new trial on the same arguments we're seeing here. And the standard for this court, then, is taking that highly discretionary standard for the trial court, was there a clear abuse of discretion in the trial court deciding that? Here the answer is clearly no. We presented three independent bases for how the jury could find non-infringement. We've just gone through two of them. The third one was the selecting so that you display each of the selected ads. Did you make an improper argument during the closing argument when you said the court has said that the ad must be displayed on each of the selected Internet media venues? I don't believe so, Your Honor. I think that what counsel is doing in that excerpt, if I can find it, is perhaps I used the word it a little ambiguously. But the it that they're pointing to, I was referring to the system. And I will represent, Your Honor, that in both the opening and the closing, I was very careful to start. You don't have the demonstratives in front of you, but I read from demonstratives that for each non-infringement argument, I started with the claim language and the court's relevant constructions verbatim and used those as the first step. And then I talked about whether or not that was met. And so taking the word it out of context and suggesting it by it, I was saying seller instead of system. One quote out of an entire trial does not show there's anything against the great weight of the evidence, clearly, Your Honor. The same thing with their pointing to Mr. Lanning's excerpts. Those are cross-examination testimony, Your Honor, on direct examination of Mr. Lanning, Your Honor. Which I did. Same process. For each module where he was going to provide testimony relating to the issue of infringement, the first thing we did was we put up, so there'd be no mistake, the claim language and the exact Markman constructions. And the questions were, and they don't point to these questions, but the questions were, did you apply that construction? Yes, I did. And did you reach a conclusion as to whether the accused system meets that construction? Yes, I did. Explain to the jury what your opinion was. That was the format following the rules set up by Markman that was consistently followed throughout. The appellant should not be able to take some paring back and forth on cross-examination about, well, you interpreted this under this meaning or that meaning as us creating an issue, a claim construction issue. We didn't even raise that. They were the ones raising that. They also point, Your Honor, to the fact that we objected a couple of times. I'm referring to the court at this point. Okay. The court says Google also contends that the claim language requires the seller to select particular Internet websites as media venues. This court rejects this construction.  Yes, I am. So what we did at trial, Your Honor, is, if I can get the claim language, we did not argue that the seller has to select. Instead, we pointed to, let me find it here, the whereby clause, this is the 025 for reference, Your Honor, column 65, it's the last element of Plan 1, whereby the electronic advertisement is displayed on each of the one or more of the selected Internet media venues. We pointed to that language together with the seller is prompted to input information to select. And what we said, if you review the record, you'll see, what we said was that each of the one, whereby the electronic advertisement is displayed on each of the one or more of the selected Internet media venues, that element wasn't met. That's what we said at trial. We didn't go back and contradict the trial court's Markman ruling, Your Honor. We stayed with it and we quoted it. We were very careful to quote it every time. And so that was our third non-imprisonment argument, Your Honor, and it was focused on the fact that in the Google-accused systems, this element isn't met. The electronic advertisement is displayed on each of the one or more of the selected Internet media venues. That's the argument we made at trial, and it wasn't inconsistent with the court's Markman order. So, in summary, there's ample evidence in the record that would support the jury verdict here, and there's certainly not evidence that would show a clear abuse of discretion by the district court in denying the motion for a new trial. Unless Your Honor has any further questions, I will sit down. Okay. Thank you, Mr. Verhoeven. Mr. Nelson, we restored your entire rebuttal time. Thank you, Your Honor. I appreciate that. Let me start out with that last point. That is what Mr. Verhoeven said is completely incorrect from the trial record. We cited this in our brief. It's A18893. Tell me where I'm wrong. This is on cross-examination because the court's construction requires that ads be displayed on each of the selected Internet venues. Question. That's each of the selected Internet media venues that were selected by the computer system. Isn't that right, Mr. Lanning? No. That were selected by the seller at the seller interface. That was their position for non-infringement. They took a whole different position for validity. This is to your part on creation, Judge Rader. To each of the selected Internet media venues. That leaves open the question of who selects. Where does the selection take place? Is it at the seller interface or the computer controller? And that's what's answered by the processing limitation as well. And so who selects is still the fundamental issue. And on the fact that Mr. Lanning did not use inconsistent interpretations, that is just completely, again, inconsistent with the record. This is in our blue brief, page 48. We say, so this is why he gave a different interpretation. Different interpretation for publishing and creation that he did for non-infringement and that he did for validity. And so we pointed out that inconsistency. And he said, why do you use this interpretation for validity when you used a different one for non-infringement? And he says, quote, this is consistent with the interpretation that Dr. Ryan has used to show infringement of Google's products. We asked him again on publishing. Mr. Verhoeven said the addition of at really didn't make any difference. Well, again, the record does not show that. It created this ambiguity so that, for example, it was undisputed in the Google system that the ads went to the user's browser. And that was their non-infringement position. But in the prior art, it also went to the user's browser. So there couldn't have been any anticipation if that were true. And we asked him this very point. We said, isn't it true that in the prior art system, it goes to the user's browser? How could it anticipate? And he says, I used Dart to create different interpretations and correct that before it became a problem. Absolutely not, Your Honor. They never corrected that. That was the very basis for it. And again, on page 52 of our blue brief, I use Dr. Ryan's interpretation for the invalidation. That is crystal clear. They are using two different interpretations. This violates the axiomatic principle from this court that you cannot use different claim constructions for invalidity and non-infringement. And that by itself, forgetting about the claim construction issues, by itself, that necessitates a new trial here because that is a misapprehension of law. Everything that Mr. Verhoeven said, he tries to make them factual disputes. But it is entirely dependent upon who selects. Is it the user or is it the computer controller? And if it is the computer controller, then there is infringement. And we have four valid claims already. And so that is the crystal key issue in the case. And again, coming back to creation, because I understand Judge Reina. I understand you say, well, lie in your bed because you agreed to creation. But if you look at it, if you look at that term of each of the selected internet media venues, that leaves open the question of who selects. That does not answer that. That was an issue for the court to decide that it didn't decide. And in Google's arguments, it had a different position of who selects. One for non-infringement when they said it was the seller who selects. And then one for validity when they said it was the computer controller that selects. Well, I'm looking back at the record. And when on cross the expert was asked if he was reading validity differently from infringement, he said, no, sir, that's not right. I'm reading them the same. Now, maybe there was a – he was correcting himself at that point. But doesn't that go to the jury then? The jury decides whether he was misleading the first time, whether he properly corrected it when he testified in correcting himself later. No, Your Honor. That is a Markman issue. It is a Markman issue on claim scope. He admitted the fact that he said a self-serving statement that I use the same interpretation. The record shows otherwise. There are undisputed facts here that for non-infringement, they used one interpretation. And for validity, they used another interpretation. What the claim says, what the scope of that claim, that is for you. That is for the district court. That is not for the jury to determine about whether you can have one interpretation for one and another interpretation for another. And the fact that he can say, oh, I use the same interpretation, when in fact he wasn't using that same interpretation, that is an issue for you to decide as a matter of law about what the scope of that claim has and doesn't have. I see my time is about to expire. I'd be happy to answer any more questions. It has expired. Thank you, Mr. Nelson. We'll move to our next case. Thank you, Your Honor.